ROBLEY D. SMITH *v.* THE STATE.

1. CONSTRUCTION OF STATUTES—REPEAL.—The offense of "driving cattle from their accustomed range" (Penal Code, 766*a;* Paschal's Dig., art. 2410*b*) is not abolished by the act approved May 17, 1873, amending art. 766 of Penal Code and enacting an article numbered

28

766*a*, in which the penalty for the theft of sheep, goats, and hogs is prescribed.

2. DRIVING STOCK FROM RANGE.—While it may not be necessary to allege the owner of the live stock so driven from its range, yet if the ownership be alleged in the indictment the allegation must be proven, and the record, not showing such evidence, is cause for reversing a judgment of conviction.

APPEAL from Williamson. Tried below before the Hon. E. B. Turner.

Robley D. Smith was indicted for fraudulently driving a cow, of the value of ten dollars, the property of Andrew Glasscock, from its accustomed range, without the consent of Glasscock, &c., on October 13, 1873. At the March Term, 1875, Smith was found guilty, fined four hundred and fifty dollars, and appealed.

*M. A. Long* with *Joseph Lee*, for appellant.

The defendant is indicted and convicted of theft by driving a cow of Andrew Glasscock from its accustomed range, and the verdict imposes a fine of $450. This verdict and judgment appear not to be justified by any law now in force. Article 6549, Paschal's Digest, p. 1332, (under which this indictment seems to have been framed, and which is distinctly charged by the court as the existing law,) has, since the compilation of Paschal's Digest, been repealed. This article, 6549, Paschal's Digest, was passed in 1866 by an act amendatory and supplemental to an act entitled "An act to establish a Penal Code;" but on the 17th of May, 1873, the code was further amended, whereby the penalty for theft of cattle is confined to punishment in the penitentiary for not less than two nor more than five years. (See Pamphlet Acts of 1873, p. 80, chap. 58.) 2 Paschal's Digest does not embrace any acts passed since 1872, as stated on the title-page and in the preface.

In the charge of the court the act of 1873 is either totally overlooked or ignored. The charge copies as the existing law the repealed section as copied in Paschal's Digest, art.

2410*b*, 766*a* of the Penal Code. After defining theft in the words of the code the judge proceeds as follows:

" The statute also provides that if any person shall willfully take into possession and drive, use, or remove from its accustomed range, any live stock not his own, without the consent of the owner, and with the intent to defraud the owner thereof, he shall be deemed guilty of theft," &c. * * * And the charge further adds: "The punishment of theft by *driving from the range* is by confinement in the State penitentiary, not to exceed two years, *or fine in a sum not to exceed one thousand dollars.*"

These are the very words of the section as it stands in Paschal's Digest, art. 2410*b*, in lieu of article 766*a* in the Penal Code, as amended by act of 12th November, 1866.

In 1873 the Legislature amended this article by "An act to amend article 766 of the Penal Code," enacting that "Article 766 of the Penal Code be and the same is hereby amended so as to hereafter read as follows:

"Art. 766. If any person shall steal *any cattle* he shall be punished by confinement in the penitentiary not less than two nor more than five years."

"Art. 766*a*. If any person shall steal any *sheep, hog, or goat* he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary not less than two nor more than five years; if the value of the property is under twenty dollars, he shall be punished by imprisonment in the penitentiary for not less than one nor more than two years." (Laws of 1873, p. 80.)

This amendment of the law plainly omits, and thereby repeals, the provision against driving from the accustomed range, as well as the provision for a *fine* for theft of any sum not more than one thousand dollars.

The indictment charges this offense to have been committed on the 15th of October, 1873, and the act of 1873 bears date May 17, 1873.

We therefore ask this court to determine that the pros-

ecution is founded upon a *repealed law*, and must be dismissed.

*George Clark, Attorney General*, for the State.

MOORE, ASSOCIATE JUSTICE.—It is insisted by counsel for appellant that so much of section first of the " act amendatory of and supplemental to an act entitled an act to establish a Penal Code for the State of Texas," approved November 12, 1866, as amends said code by inserting therein an additional article designated in said act as " article 766*a*," under which the first count in the indictment was drawn, and upon which, as appears from the record, appellant was convicted, must, by reason of section 18 of article 12 of the Constitution, be regarded as repealed by the "act to amend article 766 of the Penal Code," approved May 17, 1873. (See Laws 1866, p. 187, and Laws 1873, p. 80.)

To this proposition we are unable to yield our assent.

The section of the Constitution by which it is claimed the last of these laws must be construed to have repealed the prior one, reads: "No law shall be revised or amended by reference to its title; but in such cases the act revised or section amended shall be re-enacted and published at length." And unquestionably, if it appeared to have been the intention of the legislature by said act of 1873 to revise or amend that part of the act of 1866 designated "article 766*a*," the court would only have to look to the revised and amendatory act to ascertain and determine the law. But in our opinion the two statutes refer to entirely distinct matters, and the legislature had no intention to repeal the first of these laws by the enactment of the latter one. Although there is some apparent confusion from both of these amendments of the Penal Code having the same number, this will not warrant us in holding that the last of them, by implication merely, repeals the first.

Nor does the section of the Constitution to which we are referred have, as we think, any application to the point in dispute.

The purpose of the legislature in the enactment of these two statutes and the difference in the amendments of the code which are made by them will be plainly seen by reference to the pre-existing provisions of the code upon the subject to which they refer.

The legislature, as is apparent from an examination of the Penal Code, deemed it proper in defining offenses and affixing their appropriate penalties, not only to provide for the punishment of theft in general, but also to define and prescribe appropriate penalties to a number of different and particular character of thefts. In pursuance of this policy it was enacted in the Penal Code as originally adopted as follows, to wit:

"Article 766. If any person shall steal any neat cattle, sheep, goat, or hog, he shall be punished by confinement in the penitentiary not less than two nor more than five years."

And thus the law stood in regard to theft of cattle and other live stock mentioned in this article until 1866, when the legislature, believing the public good required the enactment of additional and more particular provisions to prevent the unauthorized and unlawful interference with live stock by the driving of them from their accustomed range and otherwise, amended the code by inserting therein said "Article 766*a*" as will be seen in said act approved November 12, 1866. (Stat. 1866, p. 187.)

And by another act, approved on the same day, said original article 766 was also amended so as thereafter to read as follows, to wit:

"Article 766. If any person shall steal any cattle, sheep, goat, or hog he shall, if the value of the property stolen is twenty dollars or over, be punished by confinement in the penitentiary not less than two nor more than five years.

If the value of the property stolen is under twenty dollars he shall be punished by imprisonment in the county jail for a term not exceeding two years, and by a fine not exceeding one hundred dollars, or by such imprisonment without fine."

These different amendments of the code plainly show that theft of cattle, and theft by driving cattle or other live stock from their accustomed range, were treated by the legislature as distinct offenses, to be repressed and punished by different penalties.

By article 766, as thus amended, the punishment for the theft of cattle or any of the other live stock therein named was made to depend upon the value of the property stolen. In 1873, the legislature, with the view of changing the law in this particular, passed the act approved May 17, 1873, to amend, not *article* 766a, but *article* 766. This amendment is made in conformity with the rule prescribed in section 18 of article 12 of the Constitution heretofore referred to, by re-enacting and publishing at length said article as it should thereafter read. And by said amendment said original article was divided into two articles, the first numbered and designated "article 766," whereby the stealing of cattle without regard to their value is punished by confinement in the penitentiary not less than two nor more than five years, while the remainder of the article as amended is embraced in an additional article designated and numbered "article 766a," in which the penalty for the theft of sheep, goats, and hogs is prescribed and fixed by reference to the value of the property stolen.

It is, we think, most obvious when these different articles of the code are collated, that this last act cannot be held by implication to have repealed the act of 1866, defining and punishing the offense of theft by driving live stock from its accustomed range.

However inconvenient it may be for the legislature to amend the code by inserting in it different articles with

the same number, or whatever uncertainty in its construc-
tion may result from such a practice, it is not within the
province of the courts to correct it. The enactment of
laws pertains exclusively to the legislative department of
the government. The manner in which it will discharge
its duties is within its discretion except in so far as it is
restrained and controlled by the Constitution.

Another view of the subject would lead to the same
conclusion. If article 766*a* of the act of May 17, 1873,
could be regarded as intended to revise or amend article
766*a* of the act of November 12, 1866, it would be in con-
flict with section 17 of Art. XII of the Constitution, which
prescribes that "every law enacted by the Legislature shall
embrace but one object, and that shall be expressed in its
title." The title of the act approved May 17, 1873, is, "An
act to amend article 766 of the Penal Code." If article
766*a*, as well as article 766, was designed to be amended,
it should unquestionably have been indicated in the title of
the act.

The only description given in the indictment of the live
stock alleged to have been stolen by appellant is embraced
in the following extract from the indictment, to wit: "Live
stock, it being a cow of the neat cattle species,  *  *  *
said cow of the value of ten dollars,  *  *  *  said cow
being there and then not his own, but was the property of
Andrew Glasscock." Whether it was necessary to have
alleged the ownership of the cow, which appellant is
charged to have driven from its accustomed range, need
not be determined at this time, (art. 766*d*, Stats. 1866, p.
188;) for whether necessary or not, there is an allegation
of ownership in the indictment, and as it aids materially
in the identity of the live stock with the theft of which
appellant is charged it was incumbent upon the State to
prove property in the cow as alleged. This it failed to do.
It was shown, it is true, that appellant told Glasscock that
he had driven up and put in Williams's herd a red cow,

branded with a figure 5, belonging to him, Glasscock. He also informed Williams that he had driven to Austin and sold the same cow which he had put in his (Williams's) herd. He also told him at the same time, however, that he had ascertained that the cow did not belong to Glasscock. And Williams, who was a witness in the case in behalf of the State, testified that the cow put into his herd by appellant "was not in Glasscock's mark." It also appears from the statement of facts that some four or five other persons in Williamson county owned similar brands to that of Glasscock. In view of these facts, we feel constrained to say that the evidence does not justify or support the verdict.

The judgment is reversed, and the case remanded to the District Court.

REVERSED AND REMANDED.